UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID TROUPE,

    Plaintiff,

v.

WILLIAM SWAIN, *et al.*,

    Defendants.

CASE NO. 3:16-CV-05380-RJB-DWC

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Noting Date: June 2, 2017

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently before the Court is Defendants' Motion for Summary Judgment ("Motion"). Dkt. 74.

The Court concludes Plaintiff failed to rebut Defendants' showing that there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiff's claims that Defendants: (1) used excessive force when they placed him in a restraint bed for twelve hours; (2) were deliberately indifferent to a serious risk of inmate health or safety; and (3) retaliated against him for filing grievances. Accordingly, the Court recommends the Motion (Dkt. 74) be granted and this case be closed.

## BACKGROUND

Plaintiff was an inmate at Stafford Creek Corrections Center ("SCCC").[1] Defendants Eric Stielau and Barry DeHaven are corrections officers at SCCC. Plaintiff arrived at SCCC on October 8, 2014, and was held in SCCC's Intensive Management Unit ("IMU"). Dkt. 10, p. 5; Dkt. 77, pp. 1-2. Shortly after his arrival, Plaintiff alleges he engaged in self-harming behaviors over a three week period which led to varying institutional responses from corrections officers and prison administrators. Dkt. 10, p. 5. Plaintiff raised numerous claims against various corrections officers, prison administrators, and Department of Corrections personnel, based on their responses to Plaintiff's attempts at self-harm. *See, e.g.*, Dkt. 10, pp. 5-14. On December 27, 2016, the Court adopted a Report and Recommendation dismissing all but the instant claims due to Plaintiff's failure to exhaust administrative remedies. Dkt. 64, 71.

The remaining claims against Defendants Stielau and DeHaven arose on October 29, 2014. On that date, Plaintiff alleges he received a razor blade inside a yellow sticky note from corrections officer Antonio Lopez. Dkt. 10, pp. 8-9. Plaintiff filed an emergency grievance to address his receipt of the razor blade, which was denied. Dkt. 10, p. 9; Dkt. 75, p. 4. In response, Plaintiff filed a second emergency grievance, where he stated: "My thoughts of suicide and self-harm have dramatically increased. While holding that razor blade tonight, no cameras, no staff, I almost killed myself. While I am not suicidal anymore, it was hard for me not because I had a razor blade, but because SCCC staff really want me to die and that's stressful." Dkt. 75, p. 5. Plaintiff also wrote "<u>not</u> suicidal right now" on the top of his second grievance. Dkt. 75, p. 5. In response, Defendant DeHaven contacted the on-call mental health professional, Jack Luadzers,

---

[1] The record reflects Plaintiff has been transferred temporarily to Washington State Penitentiary ("WSP") for the duration of unrelated proceedings in the Eastern District of Washington. Dkt. 60, Exh. A & B.

Ph.D. who then ordered Plaintiff be placed in a restraint bed until the following morning, when Plaintiff could be assessed by a mental health professional. Dkt. 75, p. 5, Dkt. 76, p. 2; Dkt. 79, p. 2. Department of Corrections[2] policy generally directs placement of an offender in a restraint chair before placement in the restraint bed, but Defendant DeHaven believed the on-call mental health professional had the authority to order a different restraint method based on circumstances. Dkt. 76, p. 3; Dkt. 79, p. 2, Dkt. 80, p. 7. Dr. Luadzers indicated the department's restraint policy allows for a restraint bed to be used "as needed" by mental health staff. Dkt. 79, p. 2.[2] Dr. Luadzers further indicated he authorized use of the restraint bed because, due to the late hour, he believed it "would provide better comfort than the restraint chair, the restraint bed use would be occurring during what would otherwise be [Plaintiff's] sleeping hours, and because mental health staff are not normally at the facility during those hours . . . ." Dkt. 79, p. 3

Defendant Stielau, acting on Defendant DeHaven's instructions, secured Plaintiff on the restraint bed at approximately 10:00 pm on October 29, 2014. Dkt. 76, p. 3; Dkt. 82, p. 2. The restraint bed "is a padded table, equipped with locking straps for both the ankles and the wrists. It also has 2 straps crossing the body of the restrained person, making it a 4-point restraint device." Dkt. 79, p. 2. Plaintiff cooperated with Defendant Stielau, and was placed in the restraint bed without incident or the use of force. Dkt. 82, p. 2. Throughout his restraint, Plaintiff was examined by nursing staff to ensure he had adequate circulation at his wrists and ankles, given opportunities to move and flex his limbs ("limb rotation"), and was taken to the restroom.

---

[2] This understanding is consistent with the "use of restraints" policy attached to Dr. Luadzers' Declaration. Dkt. 80, pp. 3-14. This policy reflects the use of restraints may be authorized by a medical provider to prevent self injury. Dkt. 80, pp. 4, 6-7.

Dkt. 81, p. 2; Dkt. 82, pp. 3, 7-10.  Plaintiff remained in the restraint bed until approximately 10:00am the following morning. Dkt. 76, p. 3; Dkt. 82, p. 10.

At the time of this incident, Plaintiff was subject to an Individual Behavior Management Plan ("IBMP"). Dkt. 77, p. 2. The IBMP indicates Plaintiff "has engaged in behaviors that have disrupted the orderly operation of the unit," including continuing to keep a wound in his leg open, threatening to stop taking his medication, requesting female staff inspect his genitals, and declaring mental health emergencies when Plaintiff is in fact experiencing behavioral issues. Dkt. 77, pp. 3-4. The IBMP identifies appropriate responses corrections officers are to take when responding to Plaintiff's claims of self harm. For example, if Plaintiff threatens self harm, corrections officers are instructed to contact Dr. Luadzers, the on-call IMU mental health professional, and place Plaintiff in a holding cell. Dkt. 77, p. 3. By contrast, if Plaintiff begins to inflict self harm, corrections officers are instructed to place him in a restraint chair, and if he continues to inflict self harm after being released from the chair, corrections officers are instructed to place him in a restraint bed. Dkt. 77, p. 4.

Plaintiff argues these alleged actions by the Defendants constitute excessive force in violation of the Eighth Amendment to the United States Constitution, and retaliation for exercising his First Amendment rights.

Defendants filed the instant motion for summary judgment on March 7, 2017. Dkt. 74. Plaintiff filed a response, along with a Motion to Stay Discovery/Add Party on March 17, 2017. Dkt. 86. The Motion to Stay Discovery/Add Party has been denied.  Dkt. 91.  Defendants filed a

reply to their motion for summary judgment on April 7, 2017.³ Dkt. 89. This case is now ready for review.

## **STANDARD OF REVIEW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials,

---

³ Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 5

and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477 U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

## DISCUSSION

I. <u>Eighth Amendment Conditions of Confinement.</u>

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Under the Eighth Amendment,

prison officials are required to provide prisoners with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.3d 1080, 1107 (9th Cir. 1986). To state a claim for unconstitutional conditions of confinement, an inmate must allege both an objective and subjective element. Objectively, a defendant's acts or omissions must deprive the inmate of "the minimal civilized measure of life's necessities" and, subjectively, a defendant must have acted with deliberate indifference to an excessive risk to inmate health or safety. *Allen v. Sakai,* 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer,* 511 U.S. at 834); *see Estate of Ford v. Ramirez—Palmer,* 301 F.3d 1043, 1049–50 (9th Cir. 2002). In evaluating claims of unconstitutional conditions of confinement, courts must consider the "circumstances, nature, and duration of a deprivation . . . in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Here, Defendants have demonstrated there is no genuine issue of material fact as to the subjective elements of this standard.[4] Plaintiff has a well-established history of self-harming behavior, and reported suicidal ideation to corrections officers on the evening of October 29, 2014. *See* Dkt. 76, pp. 2, 6, 16, 17; Dkt. 82, p. 2. In response to Plaintiff's report of suicidal ideation, mental health staff authorized Plaintiff to be placed in a restraint bed until mental health staff could conduct an in-person evaluation. Dkt. 75, p. 5, Dkt. 76, p. 2; Dkt. 79, p. 2. Dr. Luadzers indicated he authorized Plaintiff's restraint in the restraint bed in part to allow Plaintiff an opportunity to rest at night. Dkt. 79, p. 3. Throughout his restraint, Plaintiff was examined by nursing staff to ensure he had adequate circulation at his wrists and ankles, allowed regular

---

[4] Because there is no genuine issue of material fact as to the subjective element of the deliberate indifference standard, the Court need not address whether Plaintiff's restraint in a restraint bed constitutes an objective deprivation of "the minimal civilized measure of life's necessities." *Allen,* 48 F.3d at 1087.

opportunities to engage in limb rotation, and was given opportunities to use the restroom. Dkt. 81, p. 2; Dkt. 82, pp. 3, 7-10. Though Plaintiff alleges in a conclusory fashion that he experienced leg cramps while on the restraint bed, neither Registered Nurse John O. Fadele nor Defendant Stielau observed Plaintiff to be in any distress or pain, nor does Plaintiff complain of discomfort or pain in the surveillance videos. Dkt. 81, p. 3; Dkt. 82, p. 2. Dkt. 84, M2U01164_File2, M2U01169; Dkt. 86, p. 6. Plaintiff remained in the restraint bed until approximately 10:00am the following morning, when he was evaluated by mental health staff and released. Dkt. 76, p. 3; Dkt. 82, p. 10. Even assuming the use of a restraint bed impaired Plaintiff's ability to sleep or use the restroom, the use of a restraint bed under these circumstances does not rise to the level of deliberate indifference under the Eighth Amendment. *See LeMaire v. Maass*, 12 F.3d 1444, 1460 (9th Cir. 1993). If anything, the evidence demonstrates Defendants and other SCCC staff members were conscious of Plaintiff's risk of self-injury, took steps to mitigate that risk, and provided regular checks and opportunities to ensure Plaintiff's restraints did not cause him harm.

Plaintiff alleges Defendants' actions were nonetheless unconstitutional, as they were inconsistent with his IBMP. Specifically, Plaintiff argues the IBMP indicates he was not to be restrained on a restraint bed unless he was actually engaging in self-harm which could not be abated using less restrictive means. However, even if Plaintiff's allegations concerning the IBMP are true, he has failed to demonstrate how deviations from his IBMP—as distinct from the use of the restraint bed itself—constitute a violation of his federally-protected constitutional rights. *See, e.g.*, *Lovell By and Through Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 370-71 (9th Cir. 1996) (holding a violation of state law can only form the basis of a Section 1983 action where the violation of state law causes the deprivation of a right protected by the United

States Constitution). As discussed above, the evidence demonstrates Defendants were not deliberately indifferent to an excessive risk of inmate health or safety. *See Allen,* 48 F.3d at 1087. Moreover, there is no indication in the record that the IBMP is meant to supersede the Department of Corrections policies on the use of restraints, which indicate a restraint bed may be authorized by a medical provider and duty officer to prevent offender self-injury. Dkt. 80, pp. 3-14. Thus, the evidence in the record fails to establish how any alleged deviations from Plaintiff's IBMP create a genuine issue of material fact which would preclude summary judgment. Dkt. 80, pp. 4, 6.

Plaintiff has failed to show the Defendants were deliberately indifferent to an excessive risk to inmate health or safety. Accordingly, the undersigned recommends Plaintiff's Eighth Amendment claim of unconstitutional conditions of confinement against Defendants be dismissed with prejudice.

II. <u>Eighth Amendment Excessive Force.</u>

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). However, "[f]orce does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* (*quoting Whitley v. Albers,* 475 U.S. 312, 320–321 (1986)); *see also Wilkins v. Gaddy,* 559 U.S. 34, 40 (2010) (to prevail on an excessive force claim, a plaintiff must allege "not only that the assault actually occurred but also that it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline"). The Court must consider the following relevant factors to determine whether the use of force was wanton and unnecessary: "the extent of injury

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9

| 1  | suffered [,] ... the need for application of force, the relationship between that need and the |
| 2  | amount of force used, the threat [to the safety of staff and inmates] 'reasonably perceived by the |
| 3  | responsible officials,' and 'any efforts to temper the severity of a forceful response.'" *Hudson v.* |
| 4  | *McMillian,* 503 U.S. 1, 7 (1992) (*quoting Whitley,* 475 U.S. at 322). |
| 5  |       Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to |
| 6  | establish a genuine issue of material fact as to the need to use force and the amount of force used. |
| 7  | The evidence in the case demonstrates the Defendants used, at most, *de minimis* force during and |
| 8  | throughout Plaintiff's restraint in the bed. *See Hudson*, 503 U.S. at 7-8 ("The Eighth |
| 9  | Amendments' prohibition of 'cruel and unusual' punishments necessarily excludes from |
| 10 | constitutional recognition *de minimis* use of physical force . . . .")(*citing Whitley*, 475 U.S. at |
| 11 | 327). Defendant Stielau's declaration reflects Plaintiff was secured to the restraint bed without |
| 12 | incident or without the need to use force. Dkt. 82, p.2. Both Defendant Stielau and Nurse Fadele |
| 13 | checked Plaintiff's restraints to ensure they were not damaging his limbs or limiting his |
| 14 | circulation. Dkt. 81, p. 2; Dkt. 82, p.2 Defendants Stielau and Mr. Fadele's description of events |
| 15 | is corroborated by the surveillance video footage of Plaintiff's restraint on the restraint bed. The |
| 16 | video footage clearly shows Plaintiff complied with the instructions of the corrections officers |
| 17 | during the restraint process. Dkt. 84, M2U01164_File2. The video footage also demonstrates the |
| 18 | corrections officers checking the restraints to ensure Plaintiff was appropriately secured to the |
| 19 | restraint bed. *Id.* Additional video footage also demonstrates Plaintiff was periodically checked |
| 20 | by corrections officers and nursing staff, who examined the straps at Plaintiff's wrists, ankles, |
| 21 | and torso, and periodically removed and replaced straps to allow Plaintiff an opportunity to move |
| 22 | and rotate his limbs and torso. *See, e.g.*, Dkt. 84, M2U01169. |

Further, Defendants Stielau and DeHaven reasonably perceived a threat to Plaintiff's safety, based on Plaintiff's long history of self-harming behavior, coupled with his report of recent suicidal ideation and possession of a razor blade in his cell. *See* Dkt. 76, pp. 2, 6, 16, 17; Dkt. 82, p. 2. Plaintiff points to notes on his emergency grievances where he stated he was not feeling suicidal at the time he submitted the grievance, but does not dispute that he reported recent suicidal ideation or the possession of a razor blade to SCCC corrections staff. Moreover, despite Plaintiff's voluminous filings in this case, Plaintiff does not point to any evidence to rebut Defendants' showing that Dr. Luadzers' decision to place Plaintiff in the restraint bed pending mental health evaluation was a medically appropriate decision, or was otherwise a reasonable response to Plaintiff's admitted recent suicidal ideation. *See Jeffers v. Gomez*, 267 F.3d 895, 910-11 (9th Cir. 2001) (finding a prison security measure undertaken for the protection of prison officials and inmates is constitutional when it is applied in good-faith and not used maliciously); *Thompson v. Souza*, 111 F.3d 694, 701 (9th Cir. 1997) (finding a strip search not done maliciously or sadistically for the purpose of causing harm was not a violation of clearly established law).

Plaintiff has failed to show the Defendants used force maliciously and sadistically for the purpose of causing harm. Accordingly, the undersigned recommends Plaintiff's Eighth Amendment claim of excessive use of force against Defendants be dismissed with prejudice.

III.     First Amendment Retaliation.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Defendants argue there is no genuine issue of material fact as to the fifth element of a retaliation claim, as Plaintiff cannot demonstrate that the action did not reasonably advance a legitimate correctional goal. Dkt. 74, p. 17.

A Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (*quoting Sandin v. Conner*, 515 U.S. 472, 482 (1995)). As discussed in Sections I and II, above, Plaintiff had informed SCCC corrections officers that he was in possession of a razor blade and had been experiencing suicidal ideation. *See* Dkt. 76, pp. 2, 6, 16, 17; Dkt. 82, p. 2. Plaintiff also had a well-known history for engaging in self-harming behavior. Dkt. 77, p. 3. In response to these facts, Dr. Luadzers ordered Plaintiff be confined on a restraint bed pending evaluation by mental health staff at the earliest opportunity. Restraining an inmate with a long history of self-harm and admitted suicidal ideation in order to prevent that inmate from engaging in self-harm before a mental health evaluation can occur is a legitimate penological reason for Defendants' actions.

Plaintiff does not argue Defendants' proffered reason for restraining him could not constitute a legitimate penological reason for his restraint. Instead, Plaintiff takes issue with case law in this Circuit requiring courts to defer to prison official's proffered reasons for allegedly retaliatory conduct, as well as case law in this Circuit requiring plaintiffs to bear the burden of proving allegedly retaliatory action does not advance legitimate penological goals. *See* Dkt. 86, pp. 7-8. Regardless of Plaintiff's feelings towards such a burden, it remains the law of the Circuit that Plaintiff must prove the absence of legitimate correctional goals for the allegedly retaliatory conduct. *See Pratt*, 65 F.3d at 806. To that end, Plaintiff offers no evidence or argument that

Defendants DeHaven or Stielau acted in retaliation for the exercise of Plaintiff's First Amendment rights, other than the fact his restraint occurred after he filed a grievance. Though "timing can properly be considered as circumstantial evidence of retaliatory intent," timing alone is not sufficient to support such an inference. *Pratt*, 65 F.3d at 808. Thus, Plaintiff has failed to demonstrate his restraint in a restraint bed was not for a legitimate penological purpose. Accordingly, the undersigned recommends Plaintiff's First Amendment claim of retaliation against Defendants be dismissed with prejudice.

### IV. Qualified Immunity

Defendants also argue they are entitled to qualified immunity from suit. However, as Plaintiff has failed to raise genuine issues of material fact concerning his constitutional claims, the Court need not address the question of qualified immunity.

### V. Whether This Case Should Count as a Strike

"[P]risoners who have repeatedly brought unsuccessful suits may entirely be barred from [*in forma pauperis*] status under the three-strikes rule." *Andrews v. Cervantes*, 493 F.3d 1047, 1051-52 (9th Cir. 2007). The "three-strikes rule," contained in §1915(g), states:

> [i]n no event shall a prisoner bring a civil action under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The evidence shows Plaintiff has a history of abusing the litigation process. The Thurston County Superior Court has permanently enjoined Plaintiff from engaging in public records requests without court approval due to his long history of abusive behavior, which includes making threats to obtain and disseminate prison staff's personal information. *See Troupe v.*

*Tucker*, Case No. C14-5650 BHS-JRC (Dkt. 14, Exh. 14, p. 3); Dkt. 27, p. 2 ("Troupe, however, is sailing very close to the shoals of frivolousness with his pleadings. Any further complaints filed in this Court lacking merit to the extent of the current one will be considered additional evidence of malicious abuse of process."). In a separate Western District of Washington case, Plaintiff was precluded from conducting further discovery and the defendants were relieved from their obligation to respond to Plaintiff's 19th, 20th, and 21st sets of discovery due to the amount of discovery Plaintiff had served on the defendants. *See Troupe v. Blakeman*, Case No. C15-5261 RBL-KLS (Dkt. 76; 105) (Plaintiff propounded 265 interrogatories, 223 requests for production of documents, and 4 requests for admission, all contained within 21 different sets of discovery requests).

In this case, Plaintiff failed to exhaust administrative remedies available for the majority of his claims, despite evidence showing he was aware of the grievance process and frequently used the grievance process while housed at SCCC. Dkt. 64, 71. Additionally, Plaintiff has engaged in tactics which appeared to be for the purpose of delaying a decision on Defendants' Motions for Summary Judgment. *See* Dkt. 55 (Plaintiff's untimely motion for a 90-day extension of time to respond to Defendants' prior Motion for Summary Judgment), and Dkt. 86. Most recently, Plaintiff filed motions to stay the pending motion for summary judgment, amend his complaint, and conduct additional discovery, as a component of his response to Defendant's motion for summary judgment. Dkt. 86. As discussed more thoroughly in the Court's order on these motions (Dkt. 91), Plaintiff sought an order allowing him to conduct additional discovery, over a month after the discovery period closed, without demonstrating good cause or excusable neglect for his failure to timely file the motion. Further, his alleged grounds for a motion to amend his complaint and add a party at this late stage in the proceedings are contradicted by the

record. Plaintiff claims that the first he knew of Dr. Luadzers' involvement in ordering Plaintiff's restraint in a restraint bed on the night of October 29, 2014 was when Defendants mentioned his name and submitted his declaration in this motion. Dkt. 86, pp. 3, 5-6. However, this is flatly inconsistent with copies of grievances written by Plaintiff in November, 2014 through February, 2014, which Plaintiff attached to his response. *See, e.g.*, Dkt. 86, p. 15 ("I clearly wrote I was not suicidal in an emergency grievance appeal on 10-29-14, but Sgt. Stielau, Lt. Dehaven and Psych. Associate Luadzers put me into a restraint bed anyways."), Dkt. 86, p. 16 ("Jackie Luadzers, Sgt. Stielau, Lt. Whiteley, and Lt. DeHaven abused the restraint bed on me for filing an emergency grievance appeal on their co-worker."); Dkt. 86, p. 17 ("Per policy, restraint bed placement must be evaluated every 4 hrs. but Dr. Luadzers did not want to be woken up at 4:00am and with all my complaints against staff at SCCC including Dr. Luadzers . . . .") and Dkt. 86, p. 17 (Plaintiff's suggested remedy was "sanction all staff involved: Dr. Luadzers, Lt. DeHaven, Sgt. Whiteley, Sgt. Stielau, GC Dahne, and Superintendent Glebe").

Viewing the evidence as a whole, the Court finds Plaintiff's extensive history of abusive litigation tactics combined with his conduct in this case warrants finding this action is frivolous and malicious. Therefore, the Court recommends this case be counted as a strike under §1915(g). *See e.g. Finley v. Gonzales*, 2009 WL 2581357, *2 (E.D. Cal. Aug. 20, 2009) (finding dismissal for failure to exhaust alone did not count as a strike under § 1915(g); to count as a strike, "the dismissal for failure to exhaust must have been done on the grounds that the action is frivolous, malicious, or fails to state a claim"); *Reed v. CCA/Crossroads Correctional Center*, 2012 WL 5830582, *2 (D. Mont. Oct. 25, 2012) (finding failure to exhaust a strike where the plaintiff's failure to exhaust was a deliberate and defiant refusal to grieve his disputes); *Young v. Spizman*, 2008 WL 678674, *2 (W.D. Wash. March 7, 2008) (courts have found a case is malicious if it is

"plainly abusive of the judicial process or merely repeats pending or previously litigated claims").

## **CONCLUSION**

Based on the foregoing reasons, the undersigned recommends Defendants' Motion for Summary Judgment (Dkt. 74) be granted, and this case closed. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 2, 2017, as noted in the caption.

Dated this 11th day of May, 2017.

/s/ David W. Christel
David W. Christel
United States Magistrate Judge